IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **LAURA MARCELA ROSE-DODD**<br>379 Buff Cap Rd.<br>Tolland, Connecticut 06084<br><br>      Plaintiff,<br><br>      v.<br><br>**U.S. CITIZENSHIP AND**<br>**IMMIGRATION SERVICES**,<br>5900 Capital Gateway Drive<br>Mail Stop 2120<br>Camp Springs, MD 20588<br><br>**UR MENDOZA JADDOU, DIRECTOR,**<br>**U.S. Citizenship and Immigration Services**<br>5900 Capital Gateway Drive<br>Mail Stop 2120<br>Camp Springs, MD 20588<br><br>**KIRT THOMPSON, DIRECTOR OF**<br>**TEXAS SERVICE CENTER,**<br>**U.S Citizenship and Immigration Services**<br>6046 N. Belt Line Rd.<br>Irving, Texas 75038<br><br>      Defendants. | Civil No.: |

## COMPLAINT FOR DECLARATORY AND INJUCTIVE RELIEF

COMES NOW, Laura Marcela Rose-Dodd ("Plaintiff") the petitioner for a Form I-131,

Application for Travel Document ("I-131"), filed on behalf of Constanza Frabotta ("Frabotta" or

"Beneficiary"), the beneficiary. Specifically, Plaintiff filed the I-131 for the purposes of obtaining

humanitarian parole, on behalf of Frabotta. On April 14, 2022, Defendants United States

Citizenship and Immigration Services ("USCIS"), Ur Mendoza Jaddou ("Jaddou"), Director of

USCIS, and Kirt Thompson ("Thompson"), Director of Texas USCIS Service Center (collectively,

the "Defendants"), improperly denied Plaintiff's I-131. Plaintiff files this civil action seeking review of Defendants' denial of Plaintiff's I-131 and respectfully requests that this Court reverse the arbitrary and capricious denial of Plaintiff's I-131.

## JURISDICTION

1.     This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court has authority to grant relief under the APA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

2.     Pursuant to 5 U.S.C. § 702, the USCIS has waived sovereign immunity over any claim that an agency, or an officer or employee of an agency, acted, or failed to act, in an official capacity and for which a person has suffered a legal wrong.

3.     Plaintiff may seek judicial review upon denial of their visa petition without any further administrative appeal. See *EG Enterprises, Inc. v. Dept. of Homeland Sec.*, 467 F. Supp. 2d 728, 733 (E.D. Mich. 2006) (exercising jurisdiction upon finding plaintiff was not required to appeal the denial of its H-1B visa petition to the Administrative Appeals Office prior to filing suit; noting USCIS concurrence); *Young v. Reno*, 114 F.3d 879 (9th Cir. 1997) (Petitioner was not required to appeal her visa revocation to the Board of Immigration Appeals prior to seeking review in district court).

## VENUE

4.     Venue in this district is proper under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas; and there is no real property involved in this action.

## PARTIES

5.      Plaintiff Laura Marcela Rose-Dodd is the petitioner for the I-131, which makes the basis of this lawsuit.

6.      Defendant USCIS is the agency within the Department of Homeland Security ("DHS"), which is responsible for adjudicating immigration benefits, including I-131 petitions. USCIS is the agency that denied Plaintiff's I-131 petition, which is the subject of this Complaint.

7.      Defendant Ur Mendoza Jaddou is sued in her official capacity as the Director of USCIS. In this position Ms. Renaud is responsible for overseeing the adjudication of immigration benefits and establishing and implementing governing policies. Ms. Renaud also has the responsibility of adjudicating I-131 petitions, such as the one that is the subject of this Complaint.

8.      Defendant Kirt Thompson is sued in his official capacity as the Director of USCIS Texas Service Center. Mr. Thompson is responsible for all aspects of operation of the Texas Service Center, including overseeing the adjudication of Plaintiff's I-131 petition, which makes the basis of this Complaint.

## LEGAL BACKGROUND

9.      Pursuant to the INA, the Secretary of Homeland Security may use their discretion to parole any noncitizen applying for admission into the United States temporarily for urgent humanitarian reasons or significant public benefit. *See* INA §212(d)(5).

10.     Though there are no statutory or regulatory provisions outlining what constitutes an "urgent humanitarian reason," USCIS has published a broad list of factors that it takes into consideration, which include but are not limited to: (1) whether or not the circumstances are pressing; (2) the effect of the circumstances on the individual's welfare and wellbeing; and (3) the degree of suffering that may result if parole is not authorized.

11.     Further, and pursuant to the USCIS website, the factors considered in determining urgent humanitarian reasons are dependent on the reason for the parole request. USCIS has published various examples of the "most common types of urgent humanitarian parole requests," one of which is "to reunite with family in the United States for urgent humanitarian reasons." In regard to this type of parole request, USCIS states that "urgent humanitarian reasons may be based on the fact that a family member outside the United States is particularly vulnerable because of: (1) age; (2) disability; or (3) living circumstances." Pursuant to the USCIS website, USCIS encourages petitioners to provide the following evidence, specifically for this type of humanitarian parole request: (1) proof of the particular vulnerability of the family member; and (2) reasons the vulnerability cannot be addressed in the country where the family member resides.

12.     In addition to the factors that USCIS *may* take into consideration, and the suggested types of evidence to support those factors, there are a set of baseline required documents that the petitioner, beneficiary and sponsor must provide, to establish eligibility for humanitarian parole. These required documents include the following:

**Beneficiary**:

(1) A clear and legible copy of a government-issued identification document that shows the beneficiary's citizenship.

**Petitioner and Sponsor**:

(1) A clearly and legible copy of a government issued photo identification document that shows name and date of birth. For example:

    (a) A current employment authorization document, if available;

    (b) A valid government-issued driver's license;

    (c) Passport identity page;

(d) Form I-551, Permanent Resident Card, or

(e) Any other official identity document.

(2) Evidence of valid U.S. immigration status or U.S. citizenship (such as a copy of a U.S. passport, lawful permanent resident card, or U.S. birth certificate), if any, if applicable.

**Sponsor**:

(1) Evidence of how the sponsor will financially support the beneficiary in the United States, including any evidence of employment, tax records, bank statements or other evidence.

*See* https://www.uscis.gov/humanitarian/humanitarian-parole/guidance-on-evidence-for-certain-types-of-humanitarian-or-significant-public-benefit-parole-requests

13.     In the parole context, there are three (3) parties: the petitioner, the beneficiary, and the sponsor. The petitioner is the individual or entity who is filing the I-131, on behalf of the individual outside of the United States, also known as the beneficiary. The sponsor is the individual who agrees to provide financial support to the beneficiary, while they are in the United States for the duration of the beneficiary's parole. The financial sponsor may be the same person or entity as the petitioner.

14.     In a proceeding such as this one, a petitioner bears the burden of establishing eligibility for the authorization of parole. Further, the petitioner must demonstrate by a preponderance of the evidence that parole should be authorized. Meaning, even if the officer has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "probably true" or "more likely than not," the petitioner has satisfied the standard of proof. *See U.S. v. Cardoza-Fonseca*, 480 U.S. 421 (1987) (defining "more likely than not" as a greater than 50 percent probability of something occurring").

15.     Once the petitioner has met their initial burden of proof, meaning the petitioner has provided evidence that shows, at a minimum, their initial eligibility for the benefit sought, the officer then, within their discretion, determines whether approval or denial is appropriate. *See* USCIS Policy Manual, Volume 1, Part E, Ch. 4, available at https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-4#footnotelink-1 ("Policy Manual"). The discretionary analysis is conducted through a weighing of both the positive and negative factors, while considering the totality of the circumstances in the case before making a decision. *Id*.

16.     Though the adjudication of humanitarian parole applications is discretionary, and determined on a case-by-case basis, there are limitations to an officer's discretionary powers. According to the USCIS Policy Manual, "an officer may not exercise discretion arbitrarily, inconsistently, or in reliance on biases or assumptions." *See* Policy Manual, Part E, Ch. 8.

17.     Here, Defendants improperly denied Plaintiff's I-131 holding that Plaintiff failed to "provide evidence that the parole would be temporary in nature." *See* Exhibit "A". However, Plaintiff provided ***all*** the required evidence, as well as all of the suggested evidence, to USCIS. More importantly, Plaintiff did in fact provide evidence that the parole would be temporary in nature. Defendants' denial in the present matter was arbitrary, capricious, and ran inconsistent to the evidence provided by Plaintiff.

18.     A final agency action, such as the denial in the present matter, will only be held unlawful and set aside if it was "arbitrary, capricious, an abuse of discretion and not in accordance with the law." *See* 5 U.S. Code § 706(2)(A). Even more so, the APA "***requires*** courts to set aside agency actions that overlook relevant issues or inadequately explains their conclusions," as is the case in the present matter. *See Texas v. Biden*, 20 F.4th 928, 942 (U.S. 5th Cir. 2021)(emphasis added).

19.     Accordingly, Plaintiff requests that this Court hold Defendants' denial of Plaintiff's I-131 unlawful because the denial was arbitrary and capricious. *See* 5 U.S. Code § 706(2)(A).

## **FACTUAL BACKGROUND**

20.     On or about January 3, 2022, Plaintiff filed a Form I-131, Application for Travel Document, on behalf of beneficiary Constanza Frabotta, a citizen of Argentina. Plaintiff is Ms. Frabotta's aunt. A true and correct copy of the Form I-131 petition is attached hereto as Exhibit "A" and is incorporated herein by reference.

21.     Defendant USCIS issued a receipt notice (IOE0914746190) for Petitioner's Form I-131 on January 10, 2022. A true and correct copy of the receipt noticed is attached hereto as Exhibit "B" and is incorporated herein by reference.

22.     In the present matter, beneficiary Frabotta is a thirty-one (31) year old individual living with down syndrome. Ms. Frabotta relies on her mother, Viviana Raquel f/k/a Viviana Garvia Massolo ("Viviana"), and stepfather, Claudio Daniel Farina ("C. Farina") for ***all*** of her needs. *See* Exhibit "A".

23.     In November 2007, Ms. Frabotta's mother, Viviana, received an approval on her Form I-130 that was filed by Ms. Frabotta's grandmother, on behalf of Viviana. In addition, derivative petitions were filed on behalf of: Ms. Frabotta, C. Farina, and her brother, Ignacio Farina ("I. Farina"). Ms. Frabotta, Viviana, C. Farina and I. Farina will hereinafter be referred to as the "Frabotta Family." The approval notice listed a priority date of July 23, 2007. Exhibit "A".

24.     In late 2021, after waiting over fourteen (14) years, the Frabotta Family's priority date had finally become current. Unfortunately, Ms. Frabotta had aged out by this time, as she is now thirty-one (31) years old. Nonetheless, the rest of the Frabotta Family, Viviana, C. Farina and I. Farina, were all issued their Visa's to the enter the United States. Pursuant to each of their visa's, they had until April 5, 2022 to enter the United States. Exhibit "A".

25.     As stated prior, Ms. Frabotta has down syndrome and relies on her family's constant care and support to get through her daily life. As such, she cannot be left alone in Argentina. Accordingly, this is why Plaintiff applied for humanitarian parole, on behalf of Ms. Frabotta. Though the Frabotta family have each entered the United States (prior to the April 5, 2022 deadline), her mother, Viviana, has had to go back to Argentina to care for Ms. Frabotta. However, this is not a sustainable arrangement, as Viviana relies on her husband, C. Farina, to provide for Viviana and Ms. Frabotta. Further, the Frabotta family is now living in separate countries, until Ms. Frabotta receives a visa to accompany her mother to the United States.

26.     Ms. Frabotta does not have family in Argentina that are equipped to care for Ms. Frabotta. Specifically, Ms. Frabotta's only remaining family are her aunt, uncle and her biological father. Her uncle is seventy-seven (77) years old, and now retired. Her aunt needs a walker to move around and is currently waiting for a surgery. As such, neither Ms. Frabotta's uncle or aunt have the capability (financially or physically) to care for Ms. Frabotta. Moreover, Ms. Frabotta's mother, Viviana, and biologiocal father divorced in 1998, as he was physically violent with both Ms. Frabotta and her mother. Since the divorce, Ms. Frabotta's biological father has lost all custody and vistitation rights, due to his violent nature. Ms. Frabotta has not had any contact with her biological father since July 17, 2007.

27.     Though Ms. Frabotta "aged out" by the time her I-130 priority date became current, Ms. Frabotta still has a form of relief available once she enters the United States. Plaintiff merely applied for humanitarian parole, on behalf of Ms. Frabotta, so she could enter the United States with the rest of her family. Once Ms. Frabotta arrives, her mother, who upon entering the United States would be a green card holder, would be eligible to petition for Ms. Frabotta, under the F2B category, as she is an unmarried daughter, over the age of 21, of a lawful permanent resident.

28.     In support of Ms. Frabotta's I-131 petition, Plaintiff supplied the following (non-exhaustive list) of relevant documentation: (1) a copy of Petitioner's valid government-issued driver's license; (2) a copy of Petitioner's valid and current United States passport; (3) a copy of Petitioner's most recent pay stubs, bank statements, and tax return, showing her ability to financially support Ms. Frabotta, while in the United States;  (4) a copy of the Form I-797, Notice of Action, approving the I-130 petition for Viviana; (5) a copy of Viviana, C. Farina and I. Farina's visas; (6) Certificate of down-syndrome diagnosis, issued by the Board of Disability Evaluation, for Ms. Frabotta; (7) Court Order suspending the visitation rights of Ms. Frabotta's biological father; and (8) birth certificate of Ms. Frabotta, showing that Viviana is her biological mother. *See* Exhibit "A".

29.     Though it was well-within Defendant USCIS's discretion to issue a Request for Evidence ("RFE") on Plaintiff's I-131, it chose not to issue an RFE. Rather, on April 14, 2022, Defendant USCIS issued a decision denying the Plaintiff's I-131 (the "Denial"). A true and correct copy of the Denial is attached hereto as Exhibit "C" and is incorporated herein by reference.

30     Defendant USCIS unreasonably denied Plaintiff's petition holding that Plaintiff failed to provide evidence that the parole would be temporary in nature. However, Plaintiff provided substantial evidence that demonstrated Ms. Frabotta had (and still has) a permanent form of relief available to her, upon entry into the United States. Plaintiff provided evidence that Viviana, Ms. Frabotta's mother, would be eligible to file a Form I-130, Petition for Alien Relative ("I-130"), on behalf of Ms. Frabotta. Further, Plaintiff provided evidence that demonstrated Ms. Frabotta's eligibility to receive legal permanent resident status, through the I-130, thereby establishing that Ms. Frabotta's parole status would be temporary. Defendants' denial of Ms. Frabotta's I-131 was arbitrary, capricious, an abuse of discretion and not in accordance with the

law. Defendant USCIS failed to provide any logical and/or reasonable explanation as to why Plaintiff failed establish that her parole would be temporary in nature, or what Plaintiff could have provided to establish this discretionary factor. In fact, Defendant USCIS failed to provide ***any*** explanation has to why Plaintiff failed to establish that her parole would be temporary in nature. Rather, Defendant USCIS provided Plaintiff with a one-sentence explanation for the denial. Lastly, Defendant USCIS failed to issue an RFE, requesting evidence that Ms. Frabotta's parole would be temporary in nature.

### STATEMENT OF CLAIMS

### Count One: APA–the Denial is Arbitrary and Capricious

31.     Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth above.

32.     The APA empowers this Court to set aside a final agency action where, as in the present matter, the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706(2)(A). Under this standard, the court may reverse an agency decision if:

> The agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983.).

33.     USCIS' decision must reflect that it "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action." *Noroozi v. Napolitano*, No. 14 cv 2012 (PAE), 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012), citing *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000).

34.     Defendants wholly failed to discuss or otherwise demonstrate that they considered the abundance of evidence submitted by Plaintiff. In fact, the only explanation Defendants gave for the denial was that: Plaintiff failed to provide evidence that the parole would be temporary in nature. Defendants did not discuss Plaintiff's threshold eligibility, discuss any of the positive or negative factors that were considered, nor did they provide any analysis as to how they made their final determination of Plaintiff's I-131.

**A.  *Beneficiary's Parole is Temporary in Nature***

35.     Plaintiff provided the following evidence that the parole would be temporary in nature: (1) a copy of Viviana, the beneficiary's mother, visa, which clearly gives her legal permanent resident status; (2) a copy of the beneficiary's birth certificate, showing that Viviana is in fact her biological mother; (3) support letter, which outlines that upon entry into the United States, Viviana will be filing a Form I-130, on behalf of the beneficiary. *See* Exhibit "A".

36.     It should be noted that Defendant USCIS did not say that Plaintiff failed to provide **sufficient** evidence that the parole would be temporary in nature. Rather, Defendant USCIS simply stated that Plaintiff failed to **any** provide evidence that the parole would be temporary in nature. This is an objectively false statement. As outlined above, Plaintiff clearly provided evidence that the parole would be temporary in nature.

**B.  *Defendants Use of Discretion was Improper***

37.     It is hard to determine whether Defendants in the present matter conducted a proper discretionary analysis, as outlined in the USCIS Policy Manual, as Defendants failed to provide **any** explanation of the officer's findings or analysis.  *See* Policy Manual, Part E, Ch. 8; *see also*, Exhibit "C".

38.     Nonetheless, the Policy Manual states the following in regard to the improper use of discretion, "a person's threshold eligibility for the benefit sought is generally also a positive

factor. Therefore, absent any negative factors, USCIS ordinarily exercises discretion positively. Generally, if there are no negative factors to weigh against that positive factor, ***denial of the benefit would be an inappropriate use of discretion***." *See* Policy Manual, Part E, Ch. 8. (emphasis added); *see also, Matter of Arai*, 13 I&N Dec. 494, 496 (BIA 1970).

39.     The Plaintiff undisputedly met the initial threshold eligibility requirements for parole. As outlined above, the required relevant evidence for parole, for someone outside the United States and for urgent humanitarian reasons, is as followed: (1) a copy of a photo identity document for beneficiary, petitioner, and sponsor; (2) a copy of the beneficiary's passport identity page; (3) a description of the urgent humanitarian reason, including the length of time for which the beneficiary needs parole; (3) a completed Form I-134; and (4) a statement explaining why the beneficiary cannot obtain a U.S. visa.

40.     As stated above, and as evidenced by Exhibit "A", Plaintiff provided evidence to satisfy each of the initial threshold eligibility requirements for parole. Specifically, Plaintiff provided: (1) a copy of the beneficiary's passport; (2) a copy of the petitioner/sponsor's government issued driver's license and passport; (3) a completed Form I-134, with all required documentation, such as bank statements, pay stubs, and most recent tax return; and (4) a statement explaining the beneficiary's need for urgent humanitarian parole, and her eligibility for a green card, through her mother, upon entry into the United States.

41.     Plaintiff clearly satisfied that threshold eligibility requirements for parole. Defendants failed to provide any further explanation or analysis of what evidence the officer considered, or how the evidence was weighed. Further, if any negative factors were considered, Defendants failed to state what those factors were, and how they were weighed, as ***required*** by Defendant USCIS's own policies. *See* Policy Manual, Part E, Ch. 8. Section 3 ("Cases that are

denied on the basis of an unfavorable exercise of discretion ***must*** include an officer's explanation of why USCIS is not exercising discretion in the requestor's favor.")(emphasis added). Even more so, the Policy Manual states specifically, in regard to discretionary adjudications, the following:

> [t]he decision ***must*** address negative factors on an individualized basis, applying the totality of the circumstances to the specific facts of the case. The decision should specify both the positive and negative factors that the officer identified and considered in support of the decision and should explain how the officer weighted the different factors. The denial notice should set forth the rationale for the decision so that the officer's deliberation may be understood by the requestor as well as any administrative reviewer (such as the Administrative Appeals Office or immigration judge) ***and the federal courts***.

*See* Policy Manual, Part E, Ch. 8. Section D. (emphasis added).

42.     The requirement to provide a basis for a denial, even for a discretionary benefit, is found not only in USCIS's own policy manual, but through a plethora of case law on the issue.

43.     As explained above, 5 U.S.C.S. § 701(a)(2) precludes review for agency action committed to agency discretion by law, such as the benefit of humanitarian parole, however, this discretionary power is not without bounds. Rather, 5 U.S.C.S. § 706(2)(A) authorizes courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.* 463 U.S. 43 (1983.). As such, the Defendants' decision must reflect that it "considered the pertinent evidence, examined the relevant factors, and ***articulated a satisfactory explanation for its action***." *Noroozi v. Napolitano*, No. 14 cv 2012 (PAE), 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012), citing *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000) (emphasis added); *See also*, *Iaccarino v. Duke*, 327 F.Supp.3d 163, 177 (D. D.C. 2018) ("In evaluating agency actions under the arbitrary and capricious standard, the court must be satisfied that the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action…').

44.    In the same spirit, **this Court** has held that "when an agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] ***must*** undo its action." See *Iaccarino*, 327 F. Supp. 3d at 177 (emphasis added) (citing *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999)); *See also, Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). Put more simply, the agency, in this case USCIS, ***must*** explain why it acted as it did. The Court has held that this requirement serves two purposes: (1) to ensure that the agency has given careful consideration to the relevant request; and (2) to give the party an opportunity to inform the agency of any errors it may have made and to facilitate judicial review. *Butte Cnty. v. Hogen*, 613 F.3d 190, 201 (D.C. Cir. 2010).

45.    Though the adjudication of humanitarian parole applications is discretionary, an officer's discretionary powers are not without limits. In the present matter, and as emphasized above, Defendants sole reason for denying Plaintiff's I-131 was that Plaintiff failed to provide evidence that the parole would be temporary in nature. This statement is not only objectively false, as Plaintiff clearly provided ample evidence that the parole would be temporary in nature, but Defendants did not provide any explanation or basis to denial beyond that one sentence. Both USCIS's own policies, as well as case law, make it clear that an agency, such as USCIS, must provide a clear explanation as to why it decided the way it did, ***especially*** when the decision is within an officer's discretion. Accordingly, Plaintiff respectfully requests that this Court reverse the arbitrary and capricious denial of Plaintiff's I-131.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays this Court grants the following relief:

1.  Accept jurisdiction over this action;

2.  Reverse Defendants decision and grant Plaintiff's Form I-131, Application for Travel Document;

3.  Grant reasonable attorneys' fees and costs as provided under the Equal Access to Justice Act and the APA; and

4.  Grant such further relief as the Court deems just and proper.

 

Respectfully submitted,

Respectfully submitted,

*/s/ Caitlin Rowe*＿＿＿＿＿＿＿＿＿＿
Caitlin Rowe
Texas Bar No. 24124334
Sharadha Sankararaman Kodem
Texas Bar No. 24090370
The Kodem Law Firm, PLLC
580 Decker Dr., Ste. 123
Irving, Texas 75062
Phone: 888-955-6634 ext. 101
Facsimile: 817-778-9980
Email: caitlin.rowe@kodemlaw.com
Email: sharadha.kodem@kodemlaw.com

Counsel for Plaintiff